**(NOT FOR PUBLICATION)**

**STATE OF LOUISIANA**

**COURT OF APPEAL, THIRD CIRCUIT**

**CW13-56**

**SUCCESSION OF OLEAVA K. KNIGHTON (KEVIN KNIGHTON)**

**VERSUS**

**INTERVENOR: WELDON KNIGHTON, ET AL.**

**\*\*\*\*\*\*\*\*\*\***
**ON WRIT OF REVIEW FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, DOCKET NO. 50559**
**HONORABLE RONALD F. WARE, DISTRICT JUDGE PRESIDING**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders and Marc T. Amy, Judges.

**AFFIRMED.**

George V. Perez, Jr.
1425 N. Broad Av., Suite 201
New Orleans, LA 70119
(504) 858-8127
Attorney for Appellee, Kevin Knighton

Michelle A. Breaux
P.O. Box 747
Lake Charles, LA 70602
(337) 493-8443
Attorney for Appellants, Weldon Knighton, Cecelia Bartie and Weldon C. Knighton

**Cooks, Judge**

## FACTS AND PROCEDURAL HISTORY

In this Succession proceeding, the decedent's widower, Weldon Knighton (Weldon), her niece, Cecelia Bartie (Bartie), and nephew, Weldon C. Knighton (Weldon C.) have filed supervisory writs seeking review of the trial court's rulings, including a previous ruling brought before this court. In its first ruling on the matter on December 9, 2011, the trial court found the last will and testament of Oleava Knighton (Oleava) invalid because the instrument purports to be the last will and testament of both Oleava Knighton and her husband, Weldon. Although it found the will invalid, the trial court found the instrument was a valid authentic act which by its express recitation revoked all previous wills by Oleava Knighton. As no other will of Oleava dated later than the invalid dual will was presented, the court found she died intestate. The trial court found Weldon had no cause of action. The trial court also denied Bartie and Weldon C.'s Motion for Summary Judgment which asserted that Kevin Knighton was not a descendant of Oleava and that they were her surviving heirs as her niece and nephew. Bartie and Weldon C. did not seek review of the denial of their Motion for Summary Judgment. Weldon filed supervisory writs with this court and this court issued a ruling remanding the matter to the trial court to allow Weldon ten days to amend his petition to state a cause of action. This court upheld the trial court's ruling in all other respects. *See* 12-295, *Succession of Oleava K. Knighton*, (La. App. 3 Cir. 9/5/12).

Following the remand from this court allowing Weldon an opportunity to amend his original petition, the trial court granted Kevin Knighton's exception of *res judicata*, and dismissed Paragraphs 7,8,9,10, and 11 of Weldon's amended

petition. The trial court found these amended paragraphs presented no new allegations. The trial court also found Kevin Knighton is the grandson of Oleava Knighton and is her only heir as there are no other surviving descendants of equal standing. The trial court appointed an administrator of the decedent's estate, and ordered the administrator prepare a detailed descriptive list of the decedent's estate. Bartie, Weldon, and Weldon C. now seek review of the trial court's rulings.

## LEGAL ANALYSIS

When this case was previously before our court on supervisory writs in docket number 12-295, *Succession of Oleava K. Knighton*, (La. App. 3 Cir. 9/5/12), this court held (emphasis added):

> Although we find that the trial court was correct in granting the Respondent's exception of no cause of action directed to the Intervenor, Weldon Knighton, we further find that the trial court erred in granting the exception without complying with La. Code Civ. P. art 934. Therefore, we amend the trial court's ruling and hereby order Weldon Knighton to amend his petition within ten days of this order to state a valid cause of action on penalty of dismissal. *In all other respects, we find that Relators have failed to show that the trial court erred.*

The parties did not apply for a rehearing with this court nor did any of the litigants seek review from the state supreme court as provided in La.Code Civ.P. art 2166. Under the express provisions of La.Code Civ.P. art 2166(A):

> The judgment of a court of appeal becomes final and definitive if neither an application to the court of appeal for rehearing nor an application to the supreme court for a writ of certiorari is timely filed.

Clearly, all matters previously decided by this court cannot now be re-litigated by Bartie, Weldon C., or Weldon in this writ application. Thus, the trial court's earlier decision on December 9, 2011, finding Kevin has standing to proceed, the decedent's last will and testament dated July 31, 2008, is invalid, the

2

instrument dated July 31, 2008, is a valid authentic act which revokes all of Oleava Knighton's previous wills, Oleava died intestate, and denying the Motion for Summary Judgment filed by Bartie and Weldon C. is final and definitive.

In the present writ, Applicants assert the trial judge erred in having a hearing on Kevin's Exception of *Res Judicata* and "in dismissing paragraphs 7,8,9,10, and 11 of the amended petition." We find these assignments are without merit. We review the trial court's ruling sustaining the Exception of *Res Judicata* applying the manifest error standard of review. *See Arabie v. Citgo Petroleum*, 10-2605 (La. 5/4/12), 89 So.3d 307 and cases cited therein.

A simple comparison of the petition and amended petition filed by Weldon leads to no other conclusion than that he simply re-states or re-urges factual allegations already determined in the cause upon which judgment is final, and raises no factual allegation which would cure the defects in the first petition. The only issue presented anew in the amended petition is the allegation that Weldon is entitled to inherit from Oleava as her surviving spouse. Under the provisions of La.Civ.Code art. 889, Weldon could only inherit from Oleava in her intestate succession if she left no descendants. The trial court found Oleava died intestate (which ruling can no longer be contested) and is survived by her only direct descendant, her grandson Kevin Knighton. Applicants assert the trial court erred in several respects in finding Kevin proved he is the descendant of Oleava. Again we must apply the manifest error standard of review.

Applicants assert the trial judge erred in allowing the photo copy of the document captioned "Acknowledgment of Illegitimate Child" into evidence as proof that Kevin is a descendant of Oleava. The trial judge admitted the document

3

under the provisions of La.C.E. Art. 901(A) and (B)(8)(c), and Art. 1004, which provide as follows:

**C.E. Art. 901**

A. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

B. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:

[ ]

(8) Evidence that a document or data compilation, in any form:

[ ]

(c) Has been in existence thirty years or more at the time it is offered.

**C.E. Art. 1004**

The original is not required, and other evidence of the contents of a writing, recording, of photograph is admissible if:

(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . .

The trial judge believed Kevin's testimony that he had destroyed the original several years earlier because it was mildewed and dirty. The trial judge found the duplicate copy of the document executed in 1965 did not show any signs of alteration. The trial judge found that the original was not destroyed in bad faith. A trial judge has great discretion in ruling on the admissibility of evidence, and we will not disturb such a ruling unless he has abused that discretion. *Jemison v. Timpton*, 09-1166 (La.App. 4 Cir. 5/6/10) 38 So.3d 1021. Applicants assert that the original document should have been recorded, and, without such recordation

4

the copy cannot be introduced as evidence. There is no requirement in our state's laws that the original act of acknowledgment be recorded to have validity. The photo copy of the document shows that the original was an authentic act, executed before a notary and two witnesses, and even appears to bear witness to Kevin's testimony that the original was badly mildewed and not in condition to be kept or handled. The trial judge did not err in applying this exception to the hearsay rule and applicants did not object on the basis of hearsay. We can find no manifest error in the trial judge's ruling regarding admissibility of the photo copy of an ancient document.

Likewise, we find no manifest error in the trial judge's exercise of his discretion concerning the credibility of the witnesses' testimony at the hearing. The trial judge explained on the record that he did not find Bartie's testimony regarding Preston Callis' signature convincing. She failed to persuade the trial judge that she was familiar with Preston Callis' signature. Barite admitted in her testimony:

> In all honesty, you know, I didn't have a lot of opportunity [to know Preston]. I saw him only on a few occasions really. We did not live in the area, you know, Army brats. So any time that we visited – and at that time I was young. So, I don't have a whole lot of history with him.
> Q. So, you don't know very much about him?
>
> A. No. Everything would be hearsay.

Likewise, the trial judge explained that he did not believe the signature on the photograph of Preston Callis when he was a young boy was Callis' signature because the signature did not appear to be that of such a young child. Thus the trial judge found Bartie and Weldon's testimony unpersuasive. Their testimony did not prove to his satisfaction that the signature on the act of acknowledgement was

5

not Callis' as Kevin claims. Further, there was another witness who testified at the hearing who contradicted Weldon's testimony regarding Kevin. Ms. Patricia A. St. Lot, Kevin's maternal aunt, testified she knew the Knightons for years. She testified Weldon and Oleava often referred to Kevin as their grandson and openly admitted he was their grandson since his birth. She further testified Oleava and Weldon would come to her home to get Kevin and take him to their home from the time he was a baby onward. According to her testimony, Oleava and Wedlon would come to get Kevin at her home when he would visit from California. She also testified Oleava and Weldon would meet Kevin at her aunt's home, Anita Brown. This testimony directly contradicted Weldon's testimony to the effect that he never considered Kevin his grandson and never visited with him. We find nothing in the record to indicate the trial judge erred in reaching his factual findings and assessing the credibility of the witnesses testifying before him.

Applicants also assert the trial judge manifestly erred in finding Kevin was a credible witness because Kevin had a misdemeanor conviction in California. Applicants argue this conviction "tarnishes" Kevin's credibility as a witness and somehow offers proof that Kevin destroyed the ancient act of acknowledgment in bad faith. Applicants offer no legal support for this assertion. This argument merely underscores the fact that the trial judge was aware of Kevin's conviction for a misdemeanor offense in California, and despite that knowledge found Kevin was a credible witness and observed no reason to reject the duplicate document. Weldon also asserts certain documents were not entered into evidence on the record. A review of the record shows that the documents which appear as evidence in this record were in fact submitted at the hearing and were properly introduced as evidence in the matter. There is no merit to this contention.

Applicants further assert the trial judge erred in allowing Kevin to "testify about information his mother told him" but would not allow Bartie to "testify about information that Oleava Knighton told her." Applicants insist that the decedent, Oleava, is a "party" to this litigation and therefore Bartie should be allowed to testify as to what she said in the past. The trial judge tried to explain at the hearing that although this matter concerns Oleava's estate, Oleava is deceased and is not and cannot be a party to this litigation. Oleava is not a party to this litigation and our rules on hearsay bar Bartie from testifying as to what Oleava said or did not say. The trial judge correctly sustained objections to Bartie's attempts to testify as to statements made to her by Oleava. A review of Kevin's testimony reveals that he did not offer hearsay testimony about anything his mother said but merely testified that his mother told him stories over the years about her relationship with his father and about his grandparents, the Knightons. No objection was made to this testimony. Kevin did not testify as to statements made by his deceased mother but was merely explaining why he went through his mother's papers after her death. Kevin had taken care of his mother through her final illness and had placed her belongings in storage. After her death he was going through her papers and effects and came across the act of acknowledgment by Preston Callis acknowledging him as his son. The trial court properly sustained the objection as hearsay barring Bartie from testifying as to what Oleava allegedly said to her. Applicants cite no authority to indicate that Bartie's prohibited testimony should have been allowed under any of the exceptions to the hearsay rule, and we find no such applicable exception.

Because we find the trial court did not manifestly err in finding Kevin is the only descendant of his rank who survives Oleava, we find, as a matter of law,

under the provisions of La.Civ.Code arts. 880 and 888, Kevin is the heir to Oleava's estate. The judgment of the trial court is affirmed and all costs of these proceedings are assessed against Appellants, Weldon Knighton, Cecilia Bartie, and Weldon C. Knighton.

**AFFIRMED.**